# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**TECHNICAL SALES, INC.,**

     **Plaintiff,**

     v.                           **CIV. NO. 05-556 ACT/DJS**

**DRESSER, INC.,**

     **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Dresser, Inc.'s ("Dresser") Motion to Compel Arbitration and to Stay Further Proceedings filed October 13, 2005. Docket No. 15. Having reviewed the motion, the memoranda and all relevant authority, the Court being fully advised finds that the motion is not well taken and will be denied.

     <u>Background</u>.

     Plaintiff, Technical Sales, Inc. ("TSI"), originally filed this lawsuit in the Eleventh Judicial District Court, San Juan County, New Mexico. Dresser removed the lawsuit to the United States District Court for the District of New Mexico on May 20, 2005. TSI filed a Second Amended Complaint for Declaratory Relief and to Recover Damages for Breach of Contract, or Quantum Meruit, and for Misrepresentation and Unfair Practices ("Second Amended Complaint") on November 11, 2005. Docket No. 28.

     TSI is a New Mexico Corporation with its principal place of business located in Farmington, New Mexico. TSI is in the business of selling equipment and services to customers involved in oil and gas exploration and production. Dresser is a Delaware Corporation and is in the business of manufacturing and selling equipment to customers in the energy industry.

Between 1996 and 2005, TSI was Dresser's sales representative.  TSI marketed certain products manufactured by Dresser and solicited orders for Dresser's products from customers. During 2004, TSI purchased products directly from Dresser and resold and delivered these products to customers in New Mexico and other states.  TSI formally terminated its relationship with Dresser effective February 14, 2005.

On March 22, 2005,  Dresser filed an arbitration demand with the American Arbitration Association in Dallas, Texas ("Dallas Proceeding") in which Dresser claims that TSI owes money for products which Dresser sold directly to TSI.  Dresser contends that TSI agreed to arbitrate these claims.  These sales were made by three separate business units of Dresser:  1) Modern Supply Company; 2) Masoneilan; and 3) Flow Solutions.  TSI agrees that the Flow Solutions invoices are subject to arbitration.  However, TSI asserts that it has not agreed to arbitrate the Modern Supply Company and Masoneilan invoices.

On March 25, 2005, Dresser filed an arbitration demand with the American Arbitration Association in Houston, Texas, ("Houston Proceeding") in which Dresser seeks a declaration that it does not owe TSI any commissions.  TSI filed a counterclaim in the Houston Proceeding in which it seeks payment of commissions owed under the sales representation agreements which contain arbitration clauses.

In this lawsuit TSI seeks a declaration that Dresser's claims to recover money for the sales of Modern Supply Company and Masoneilan products are not subject to arbitration.  TSI also seeks a declaration that it is entitled to an offset against the amount it owes Dresser for the purchase of products equal to the amount of unpaid commissions.  TSI also is seeking damages for breach of contract, quantum meruit, misrepresentation and unfair practices arising out of Dresser's failure to

pay commissions.

<u>Law regarding arbitration.</u>

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., courts have developed a federal common law of arbitrability that demonstrates Congress' expression of a strong policy favoring the resolution of commercial disputes through arbitration. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270-71 (1995). Under this law, "the question of arbitrability--whether a [contract] creates a duty for the parties to arbitrate the particular grievance--is undeniably an issue for judicial determination." *AT&T Technologies v. Communications Workers*, 475 U.S. 643, 649 (1986). When the dispute is whether there is a valid and enforceable arbitration agreement, the presumption of arbitrability falls away. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995).

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960); *Local 5-857 Paper v. Conoco, Inc.*, 320 F.3d 1123, 1126 (10th Cir. 2003); *Spahr v. Secco*, 330 F.3d 1266, 1269 (10th Cir. 2003). In determining whether there is a valid and enforceable agreement to arbitrate, the Court must apply general state law contract principles. *Summit Contractors, Inc. v. Legacy Corner, LLC*, 2005 U.S. App. LEXIS 19663 (10th Cir. 2005).

The agreements at issue provide that they are to be interpreted in accordance with the laws of the State of Texas. Pursuant to Texas law, the court's objective in interpreting a contract is to give effect to the written expression of the parties' intent. *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998). In doing so, the Court reads all of the parts of the contract together, striving to give meaning to every sentence, clause, and word to avoid rendering any portion

inoperative.  *Id*.  In construing an unambiguous contract, the court discerns the parties' intent from the face of the agreement itself.  *Intratex Gas Co. v. Pucket*t, 885 S.W. 2d 274, 277-78.

<u>Contracts.</u>

*Grove-TK Products.*

The first relevant contract between TSI and Dresser is the Sales Representation Agreement ("January 1, 1999, Agreement") which is attached to the Response, Exhibit 2A, Supplemental Affidavit of John Greaney, President of TSI.  The January 1, 1999, Agreement does not contain any provisions concerning arbitration.  In this agreement TSI was granted an exclusive right to represent the Grove-TK Products in the territories specified in the agreement.

The only other written agreement pertaining to the Grove-TK Products in the Authorized Domestic Sales Representation Agreement ("March 1, 2002, Agreement") which was attached to the Reponse, Exhibit 2C, Supplemental Affidavit of John Greaney.  Relevant sections include:

12.    PREVIOUS AGREEMENTS.  This Agreement hereby cancels and abrogates any previous oral or written agreement Dresser or any Affiliate and Representative with respect to the subject matter hereof.  This Agreement shall constitute the only agreement between the parties with respect to the subject matter hereof and that [sic] it may not be modified, supplemented, explained or waived by parol evidence, custom or customary dealing between the parties or in any other way except in writing signed by an authorized Representative of each party.


14.    LIFE OF AGREEMENT.  Unless terminated as hereinbelow provided, this Agreement shall commence on the date first written above and shall continue until December 31 2002.  Thereafter, this Agreement may be continued on an annual basis subject to the written Agreement of the parties.

17.    APPLICABLE LAW and ARBITRATION...
17.2    (a) Any dispute arising out of or related to his Agreement or by the products and/or services provided hereunder, which has not been resolved by the negotiation procedure described above, shall be settled by binding arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules and judgment on the award rendered by the arbitrator(s) may be entered in any

court having jurisdiction thereof.

Pursuant to the express terms of the March 1, 2002, Agreement, the Agreement can not be extended beyond December 31, 2002, except by a writing signed by all parties.  There is no such written agreement.  Thus, sales of Grove-TK products after December 31, 2002, were not made pursuant to the March 1, 2002, Agreement.

*Becker Products.*

The first Agreement involving Becker Products is the Sales Representation Agreement ("September 10, 2000, Agreement"), which is attached as the Response as Exhibit 2B, Supplemental Affidavit of John Greaney.  There is no mention of Grove-TK products in the September 10, 2000, Agreement.  The September 10, 2000, Agreement contains the following relevant provisions:

12.     PREVIOUS AGREEMENTS.  This Agreement hereby cancels and abrogates any previous oral or written Agreement between DRESSER and REPRESENTATIVE with respect to the subject matter hereof.  It is agreed by DRESSER and REPRESENTATIVE that this Agreement hereafter shall constitute the only Agreement between them with respect to the subject matter hereof and that it may not be modified, supplemented, explained or waived by parol evidence, custom or customary dealing between the parties or in any other way except in writing signed by an authorized representative of DRESSER.

13.     LIFE OF AGREEMENT.  Unless terminated as herein below provided, this Agreement shall continue until December 31, 2001, and shall thereafter continue automatically until terminated as hereinafter provided.

17.     APPLICABLE LAW and ARBITRATION...
17.2.    (a) Any dispute arising out of or related to this agreement or the products and/or service provided hereunder, which has not been resolved by the negotiation procedure described above, shall be settled by binding Arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

Pursuant to Article 13 of the September 10, 2000, Agreement, that Agreement continued after

December 31, 2001, until March 1, 2003, when it was superceded by the Authorized Sales Representation Agreement ("March 1, 2003, Agreement") which is attached to the Response as Exhibit 2D, Supplemental Affidavit of John Greaney.  The March 1, 2003, Agreement describes the same Becker products and also includes "Grove Regulators."   The Agreement also contains the following relevant provisions:

> 12.   PREVIOUS AGREEMENTS.  This Agreement hereby cancels and abrogates any previous oral or written agreement Dresser or any Affiliate and Representative with respect to the subject matter hereof.  This Agreement shall constitute the only Agreement between the parties with respect to the subject matter hereof and that [sic] it may not be modified, supplemented, explained or waived by parol evidence, custom or customary dealing between the parties or in any other way except in writing signed by an authorized representative of each party.

> 14.   LIFE OF AGREEMENT.   Unless terminated or hereinbelow provided, this Agreement shall commence on the date first written above and shall continue until December 31, 2003.  Thereafter, this Agreement may be continued on an annual basis subject to the written Agreement of the parties.

> 17.   APPLICABLE LAW and ARBITRATION
> 17.2   (a) Any dispute arising out of or related to this Agreement or the products and/or services provided hereunder, which has not been resolved by the negotiation procedure described above, shall be settled by binding Arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

This contract by its express terms applies only to Becker Products and Grove Regulators. The only significant change in the provisions of the September 10, 2000, Agreement and the March 1, 2003, Agreement is that the March 1, 2003, Agreement can only be extended by a writing signed by both parties.  There is no such writing.  Thus, any sales of Becker Products and Grove Regulators after December 31, 2003 was not made pursuant to this Agreement.

*Sales invoices.*

These agreements are invoices under which TSI purchased products directly from three separate business units of Dresser; namely Modern Supply Company, Masoneilan and Flow Solutions.

John Greaney states in his Affidavit that:

6.   During 2004, TSI also purchased products directly from three business units of Dresser, specifically Flow Solutions, Modern Supply Company and Masoneilan. TSI resold these products to customers in New Mexico and other states...

7.   The Flow Solutions invoices have pre-printed terms of sale printed on the back side of each invoice. One of these pre-printed terms of sale is that any dispute relating to the products identified in the invoice are subject to arbitration in Dallas, Texas. The Modern Supply Company and Masoneilan invoices, however, do not contain any reference to arbitration, and TSI has never agreed to arbitrate disputes arising out of the purchase of goods identified those invoices.

Affidavit of John Greaney, Exhibit 1 to Response.

Only the Flow Solutions invoices include "terms of sale" containing a reference to arbitration. The Modern Supply Company and Masoneilan invoices do not contain any reference to arbitration.

*Stipulations.*

The parties agree that the following disputes will be submitted to arbitration:

1.   Disputes regarding commissioners owed to TSI under the March 1, 2002, Agreement regarding Grove-TK Products, which was in effect from March 1, 2002, through December 1, 2002.

2.   Disputes regarding commissions owed to TSI under the September 10, 2002 Agreement regarding Becker Products, which was in effect from September 10, 2000, through March 1, 2003.

3.   Disputes regarding commissions owed to TSI under the March 1, 2003, Agreement regarding Becker Products, which was in effect from March 1, 2003, through December 31, 2003.

4.   Disputes regarding payment of the Flow Solutions invoices.

*Discussion*.

TSI is seeking damages for commissions on sales made after the contracts at issue had expired. That is, TSI's claims are based solely upon sales which occurred after the expiration of the contracts at issue. TSI asserts that pursuant to the express terms of the contracts the disputes at issue are not required to be arbitrated. Dresser does not appear to disagree that the express terms do not require arbitration. However, Dresser asserts that the disputes are issue are subject to arbitration on the grounds that: (1) there is a presumption in favor of arbitrating these disputes; (2) the agreements although expired contained broad arbitration clauses; (3) the agreements directly control orders accepted by Dresser after December 31, 2003; (4) the disputes between Dresser and TSI are arbitrable because the parties never expressly repudiated the arbitration clause; and (5) all the disputes between Dresser and TSI "arise out of" or "relate to" the agreements. Dresser's arguments fail. As previously stated, TSI must arbitrate only what it has agreed to arbitrate. *Steelworker*, 363 U.S. at 582; *Local 5-857 Paper*, 320 F.3d at 1126; *Spahr*, 330 F.3d 1269. Dresser's theories do not demonstrate that TSI agreed to arbitrate the disputes at issue.

As discussed above, there is no presumption of arbitrability at this point. The dispute is whether there is a valid and enforceable arbitration agreement for specific disputes between TSI and Dresser. When there is a dispute as to whether there is a valid and enforceable arbitration agreement, the presumption does not apply. *First Options of Chicago*, supra. That is, the issue before the Court is not whether a dispute is within the scope of an arbitration agreement but whether there is a valid and enforceable arbitration agreement at all.

Nor is there any presumption of continuing arbitrability in the matters at issue. The Tenth Circuit has held that the presumption of continuing arbitrabilty "disappears in either of two situations:

8

first, if the parties express or imply an intent to repudiate post-petition arbitrability, and second, if the dispute cannot be said to arise under the previous contract." *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp*., 157 F.3d 775, 781 (10th Cir. 1998).  To "arise under" a previous contract, the dispute "must either involve rights which to some degree have vested or accrued during the life of the contract and merely ripened after termination, or relate to events which have occurred at least in part while the agreement was still in effect.  *Id.*, citing *United Food & Commercial Workers Int'l Union v. Gold Star Sausage Co.*, 897 1022 (10th Cir 1990) and *Primex Int'l Corp. v. Wal-Mart Stores, Inc*., 89 N.Y.2d 594, 657 N.Y.S.2d 385, 678 N.E.2d 624, 626 (1997) (holding that commercial disputes relating to two expired contracts were arbitrable, but any portion of the disputes relating to the last contract between the parties which lacked an arbitration clause, was not arbitrable).

There is no presumption of continuing arbitrability in the contracts at issue. The first contract before the Court is the September 1, 1999, Agreement.  As the parties have not submitted any previous agreements this Agreement cannot "arise from" or "relate to" a "previous" contract." Moreover, this Agreement contained no arbitration clauses.  The second and third contracts,  the March 1, 2002, Agreement and the March 1, 2003, Agreement required any extension to be in a writing signed by both parties.  There is no such writing.  Sales of products by TSI after the expiration dates of these contracts are not covered by the terms of these Agreements.  These sales do not "arise under" or "relate to" these contracts as they have expired.  Finally, there is no presumption of continuing arbitrability in the Modern Supply Company and Mansoneilan invoices because it is undisputed these contracts do not contain arbitration clauses.  Nor has Dresser showed that they "relate to" or "arise from" previous contracts.

Dresser's argument that the agreements contain broad arbitration clauses has no merit. The Court finds that there is no valid and enforceable arbitration agreement as to the disputes at issue. Thus, whether the arbitration clauses, that do not have any bearing on the disputes at issue, have broad or narrow arbitration clauses is simply not relevant.

Dresser relies in part on a letter from Pat Murphy, Dresser's Vice President of Sales to John Greaney dated December 1, 2004. The letter removes "the states of Arizona and Nevada from the contractual marketing responsibility of TSI." Motion, Exhibit 6. It also states that "TSI will remain a very important part of the marketing organization for DFS in the balance of the territory you cover." *Id*. Thus the letter appears to clarify the scope of a subsequent non-written agreement. It clearly does not extend the March 1, 2003, Agreement because it does not mention the Agreement and is not signed by both parties.

Dresser's reliance on *Riley* is wholly misplaced. In *Riley*, plaintiff and defendant entered into a distribution agreement that contained an arbitration clause. A dispute arose between the parties that they resolved by a settlement agreement. The settlement agreement did not contain an arbitration provision but did contain a merger provision to supercede the original distribution agreement. The Court held that:

> "[t]he merger clause in the Settlement Agreement revoked the prior right of the parties to demand arbitration on these specific topics. However, nowhere does the Settlement Agreement affect the right of the parties to demand arbitration on topics unrelated to the enumerated "subject matter" of the Settlement Agreement." *Riley*, 157 F.3d 784.

*Riley* is readily distinguishable from the present case. Here there are no documents which include a merger provision or in any way alter the terms of the contracts at issue. Moreover, as the Court finds that there is no arbitration agreement governing the disputes at issue, Dresser's argument that TSI

must expressly repudiate an arbitration clause is without merit.

Dresser cites many cases to support its argument that the parties' course of dealings demonstrated their intent to submit disputes to arbitration. The Court has reviewed these cases and finds they are not helpful to Dresser's position. For instance, in *Daisy Manufacturing Co., Inc. v. NCR Corp.*, 29 F.3d 389, 393 (8th Cir. 1994) the arbitration clause at issue contained "a broad arbitration clause that covered 'any controversy or claim' related to' any contract hereafter entered into" by the parties. There is no such arbitration clause in the contracts at issue in this matter. In *GMAC Commercial Credit LLC v. Springs Industries, Inc.*, 171 F. Supp. 2d 209 (S.D.N.Y. 2001) the issue was whether a finance assignee suing on an assigned contract is subject to the contract's arbitration clause. That issue is not relevant to the issues before the Court. In *Avrick v. Craftmatic Organization Inc.*, 1995 U.S. Dist. LEXIS 18122, *10 (E.D. Penn. 1995) the Court found that a subsequent writing was "mere modification" of a previous agreement that contained an arbitration clause. *Washington Heights v. District 1199*, 748 F.2d 105 (2nd Cir. 1984) involved an agreement that had not been put into writing. The court remanded for further determination whether the parties had reached an informal agreement. Again, this matter does not involve an unwritten, informal agreement between the parties.

Dresser appears to argue that because the expired contracts will be used as evidence to determine commissions, the arbitration clause continues. The Court finds no support for this argument. TSI will be proceeding to recover commissions under, *inter alia*, the theory of quantum meruit. *Second Amended Complaint, Count VI*. The Supreme Court of Texas has set forth the following four elements to recover under the theory of quantum meruit: "(1) valuable services were rendered: (2) for the person sought to be charged: (3) which were accepted and enjoyed: (4) under

circumstances giving reasonable notice that compensation was expected for the services." *Infra-Pak (Dallas) Inc. v. Carlson Stapler & Shippers Supply, Inc*., 803 F.2d 862, 865 (1986).   Clearly, evidence of prior contracts will be evidence of recovery of commissions under quantum meruit. However, this does not extend the terms of the contract beyond what was written in the contract.

Dresser's reliance on a reference to a contract in a letter does not extend the contract. Dresser cites to a January 15, 2005, letter from TSI concerning termination of a contract.  Dresser's Motion, Exh. 8.    The contract at issue, the March 1, 2002, Agreement, by its express terms cannot be extended except by written agreement of the parties.

Finally, Dresser asserts that the arbitration proceeding in Texas ("Houston Proceedings") will have a preclusive effect on the issues before this Court and thus the Court should stay this proceeding pending the arbitration proceeding.  Dresser did not offer any support that the Houston Proceedings will have a preclusive effect on this proceeding.  Nor does the Court find any preclusive effect.  The arbitrators in the Houston Proceeding will decide the commissions Dresser owes TSI, if any, under the contracts with an arbitration clause.  The Court will decide damages, if any Dresser owes TSI under the theory of quantum meruit or pursuant to contracts that contain no provisions for arbitration.

**IT IS THEREFORE ORDERED** that Defendant Dresser, Inc.'s Motion to Compel Arbitration and to Stay Further Proceedings filed October 13, 2005, is denied.

**IT IS FURTHER ORDERED** that the following disputes will be submitted to arbitration:

1.     Disputes regarding commissioners owed to TSI under the March 1, 2002, Agreement regarding Grove-TK Products, which was in effect from March 1, 2002, through December 1, 2002;

2.     Disputes regarding commissions owned to TSI under the September 10, 2000, Agreement regarding Becker Products, which was in effect from September 10, 2000,

through March 1, 2003;

3.     Disputes regarding commissions owed to TSI under the March 1, 2003, Agreement regarding Becker Products, which was in effect from March 1, 2003, through December 31, 2003; and

4.     Disputes regarding payment of the Flow Solutions invoices.

**AND** the following disputes will be decided by the Court:

1.     Disputes regarding commissions owed to TSI under the January 1, 1999, Agreement regarding Grove-TK Products, which was in effect from January 1, 1999, through March 1, 2002, and which has no arbitration clause;

2.     Disputes regarding commissions owed TSI on the sales of Grove-TK Products after December 31, 2002, which is the expiration date of the March 1, 2002 Agreement pertaining to Grove-TK Products;

3.     Disputes regarding commissions owed to TSI on the sales of Becker Products after December 31, 2003, which is the expiration date of the March 1, 2003, Agreement pertaining to Becker Products; and

4.     Disputes regarding the payment of the Modern Supply Company and Masoneilan invoices.

**FINALLY IT IS ORDERED** that Defendant's request for a stay is denied.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE,**
**PRESIDING**