IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**TECHNICAL SALES INC.,**

    **Plaintiff,**

vs.                                                                            No. CIV 05-0556 ACT/DJS

**DRESSER, INC.,**

    **Defendant,**

vs.

**JOHN GREANEY,**

    **Third-Party Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the following motions: (1) Plaintiff's First Motion to Compel Discovery **[Doc. No. 42]**, filed March 10, 2006; (2) Plaintiff's Opposed Motion For Ruling on Plaintiff's Motion to Compel **[Doc. No. 71]**, filed March 6, 2007; and (3) Plaintiff's Second Motion to Compel Discovery **[Doc. No. 72]**, filed March 7, 2007.

Plaintiff's First Motion to Compel Discovery moves the Court for an order compelling Defendant to answer Plaintiff's November 13, 2005 First Set of Interrogatories and Request for Production of Documents. The Court tolled the time for Defendant to respond to these interrogatories and to produce any documents until the Court ruled on Defendant's Motion to Compel Arbitration. On December 28, 2005, the Honorable Alan C. Torgerson denied the

motion to compel arbitration (Doc. No. 33).[1]  Thereafter, Defendant served its responses to Plaintiff's First Set of Interrogatories and Requests For Production of Documents, asserting numerous objections.  Plaintiff contends Defendant's objections have no basis.  Additionally, Plaintiff contends Defendant provided no information in its answers to the interrogatories and has refused to produce almost all documents requested in Plaintiff's Requests for Production of Documents.

Plaintiff's Second Motion to Compel Discovery moves the Court for an order compelling Defendant to answer Plaintiff's January 26, 2007 Second Set of Interrogatories and Requests for Production of Documents.  Plaintiff contends Defendant "has refused to provide information . . . on the grounds that the requests allegedly 'circumvent' the Court's September 27, 2006 Order."  Pl.'s Second Mot. to Compel Discovery at 1.

## I.  Discussion

Discovery plays an important role in our adversarial system: full development of the facts surrounding a matter furthers "the purpose discovery is intended to serve– advancing the quest for truth."  *Taylor v. Illinois,* 484 U.S. 400, 430 (1988).  Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ."  Fed.R.Civ.P. 26(b)(1).  The Rule's relevancy requirement is to be construed broadly, and material is relevant if it bears on, or reasonably could bear on, an issue that is or may be involved in the litigation.  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350 (1978).

---

[1] The facts of this case are set forth in the Court's December 28, 2005 Memorandum Opinion and Order.

Federal Rule of Civil Procedure 34 governs requests for production of documents. Rule 34 requires a written response to a request for production to "state with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated. If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts." Fed.R.Civ.P. 34(b). Subsection (b) also provides that a party who produces documents for inspection "shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." *Id.* Under subsection (a), a party may be required to produce relevant documents and tangible things that are within its "possession, custody or control." Fed.R.Civ.P. 34(a). "[C]ontrol comprehends not only possession but also the right, authority, or ability to obtain the documents." *Comeau v. Rupp*, 810 F.Supp. 1127, 1166 (D.Kan. 1992).

## A. Interrogatories Nos. 1, 2, 4 and 5

### 1. Interrogatory No. 1

Plaintiff served five (5) interrogatories to Defendant. Interrogatory No. 1 directed Defendant to identify "the witnesses it intends to call at trial." Defendant responded (1) "the request was "premature and unduly burdensome" and (2) it was "not yet able to determine what witnesses it intends to call at the trial of this matter" and "will identify its trial witnesses in accordance with the Rules of Civil Procedure and the Court's orders in this matter." Def.'s Resp. to Pl.'s First Set of Interrogs. and Request for Production of Documents (attachment to Pl.'s First Mot. To Compel Discovery).

Plaintiff's takes issue with Defendant's response that Interrogatory No. 1 was "premature and unduly burdensome." However, Plaintiff agrees that if Defendant has not yet determined what witnesses it intends to call at trial in this matter, then Defendant need only identify those witnesses when they become known to Defendant in accordance with Defendant's duty to supplement. Defendant has agreed to provide this information as it becomes known to it.

**2. Interrogatory No. 2**

Interrogatory No. 2 directs Defendant to "state in detail the procedure, if any, by which Dresser determined whether products sold during the period between January 1, 1999, and March 1, 2005, were destined for use in any of the territories described in the Sales Representation Agreements, including a complete description of any changes in the procedure made during that time period." In addition, Interrogatory No. 2 requests "the name of each employee who was involved in making such determinations, and a complete description of that person's involvement in making such determinations."

Plaintiff contends Defendant has provided most of the requested information but complains that Defendant failed to provide a complete description of each person's involvement in determining whether products sold between January 1, 1999 and March 1, 2005, were destined for use in TSI's territory. Plaintiff contends this information is relevant because it need to know the role of each person identified in order to determine whether to depose the identified individual(s).

In its response, Defendant asserts it "provided a full description of the procedure and a listing of Dresser employees involved in making such determinations." Def.'s Resp. to Pl.'s First Mot. to Compel at 4. However, Defendant failed to respond to Plaintiff's complaint that it failed

4

to provide a complete description of each person's involvement in determining whether products sold between January 1, 1999 and March 1, 2005 were destined for use in TSI's territory. Defendant shall supplement its response to Interrogatory No. 1 and provide the requested information.

### 3. Interrogatories Nos. 4 and 5

Interrogatory No. 4 asks:

Does Dresser contend that there was an agreement between Dresser and TSI in effect during the period January 1, 2003 through March 1, 2005, regarding the payment of commissions to TSI for sales of products described in Schedule B of the March 1, 2002 Agreement? If yes, state the following:

In its response, Defendant referred Plaintiff to the Court's December 28, 2005 (Doc. No. 33) Memorandum Opinion and Order in its answer, stating: "the Court has ruled [ ] that the March 1, 2002 Agreement required any extension of the agreement to be in writing signed by both parties, and it found there is no such writing." Def.'s Resp. to Pl's First Set of Interrogs. and Request for Production of Documents at 6.

Interrogatory No. 5 asks:

Does Dresser contend that there was an agreement between Dresser and TSI in effect during the period January 1, 2004 through March 1, 2005 regarding the payment of commissions to TSI for sales of products described in Schedule B of the March 1, 2003 Agreement? If yes, state the following:

Again, Defendant referred Plaintiff to the Court's December 28, 2005 Memorandum Opinion and Order.

Interrogatory No. 4 concerns the March 1, 2002 Agreement and Interrogatory No. 5 concerns the March 1, 2003 Agreement. The Court notes that in its Motion to Compel

Arbitration (Doc. No. 15) Defendant advanced the argument that it had extended the March 2003 Agreement. Specifically, Defendant argued:

> On December 1, 2004, Dresser wrote TSI concerning a change to the Territory in which TSI could solicit orders for Dresser in 2005. *See* Exhibit 6, December 1, 2004 letter from Pat Murphy to John Greaney. That letter reads, "[W]e discussed the removal of the states of Arizona and Nevada from the contractual marketing responsibility of TSI. With this notice, the change will become effective January 1, 2005." *See* Exhibit 6. <u>The letter constitutes a written agreement continuing the 2003 Agreement, with a change to the Territory. This letter is evidence that the 2003 Agreement did continue beyond its December 31, 2003 term, with modifications that are set forth in the letter. The letter did not otherwise modify the 2003 Agreement beyond the change in territory</u>.

Def.'s Mot. to Compel Arbitration at 6 (emphasis added). This is specifically the information Plaintiff is requesting, i.e., Defendant's understanding as to the existence of an agreement, written or otherwise, with Plaintiff after the March 1, 2002 Agreement and the March 1, 2003 Agreement expired. Defendant should fully respond to Interrogatories 4 and 5.

**B.  Request for Production of Documents**

In Plaintiff's Opposed Motion For Ruling on Plaintiff's Motion to Compel **[Doc. No. 71]**, Plaintiff moves the Court to rule upon its Motion to Compel with respect to Requests for Production Nos. 1, 11, 12, 13 and 14.

**1.  Request for Production No. 1**

Request No. 1 requests Defendant produce a copy of each document it intends to offer as an exhibit at trial. Defendant responded it had not yet determined what witnesses it intended to call at trial and would identify its trial witnesses in accordance with the Rules of Civil Procedure and the Court's orders in this matter. This matter is set for a jury trial on March 10, 2008 (Doc. No. 119). the Court's Jury Trial Notice requires that witnesses be identified in accordance with the Pretrial Order and in no event later than twenty (20) calendar days before trial. However,

6

there is no Pretrial Order in this case.  Thus, Defendant was not required to produce documents it had not yet determined it would use at trial.

### 2.  Requests for Production Nos. 11, 12, 13 and 14

As a preliminary matter, the Court will address Defendant's claim that Plaintiff's request for a ruling on Plaintiff's Request for Production Nos. 11, 12, 13 and 14 is an improper attempt to circumvent the audit process to which Plaintiff agreed.  Def.'s Corrected Resp. to Pl.'s Opposed Mot. for Ruling on Pl.'s Mot. to Compel (Doc. No. 76).  Defendant contends the parties agreed to an independent audit which would "obviate the need for a ruling with respect to the scope of the documents to be produced by Dresser" and "that the Court's ruling on the motion to compel should be held in 'abeyance pending the completion of the audit.'"  *Id.* (citing to May 12, 2006 Joint Motion to Vacate  (Doc. No. 52)).

On May 12, 2006, the parties filed a Joint Motion to Vacate the Present Pretrial Deadlines and Trial Setting (Doc. No. 52).  In that motion, the parties represented to the Court that they had been negotiating in good faith upon the terms of an independent audit of the transactions between the parties which are at issue in this lawsuit.  The parties had met with the Court regarding this matter and were in the process of documenting the terms and parameters of the audit. Because the parties did not know how long the audit would take, the parties' joint motion requested the Court hold in abeyance its ruling on Plaintiff's First Motion to Compel Discovery "pending completion of the audit."  Joint Mot. to Vacate at 2.  The parties also asserted "that very little, if any, additional discovery [would] be needed following completion of the audit."  *Id.*  On May 17, 2006, the Judge Torgerson granted the motion.  *See* May 17, 2006 Order (Doc. No. 55).

On September 27, 2006, Judge Torgerson entered an Order (Doc. No. 59) setting forth the procedure by which the auditor would review records and prepare the audit. On November 27, 2006, Plaintiff filed a Motion to Modify the September 27, 2006 Order. Specifically, Plaintiff moved to modify paragraph 4 of the Order. Paragraph 4 states:

> **4.    Auditor to determine scope of documents to be produced.** The parties agree that the independent auditor shall be charged with determining the relevant documents and records that need to be examined to evaluate the commission claims and prepare its final report. The parties also agree that TSI may review those documents actually reviewed by the independent auditor after execution of mutually acceptable confidentiality agreement.

Plaintiff moved to modify paragraph 4 to provide for each party to inspect all documents produced by the other party to the auditor. Plaintiff asserted the auditor had informed the parties that, due to the volume of documents, he intended to use a "sampling" method to determine whether there were sales of products destined for use in TSI's territories for which Defendant did not pay Plaintiff. Plaintiff argued it should be allowed to examine all documents Defendant provided to the auditor since sampling would not adequately insure that all relevant transactions would be examined. Defendant took the position that Plaintiff could only examine the documents the auditor actually examined in connection with the random sampling.

On January 8, 2007, Judge Torgerson entered an Order (Doc. No. 64) denying Plaintiff's Motion to Modify. However, the Order made clear that Plaintiff could renew its motion. On April 3, 2007, Plaintiff filed its Motion to Clarify Audit Order (Doc. No. 85). On May 14, 2007, Judge Torgensen entered a Memorandum Opinion and Order (Doc. No. 97) granting Plaintiff's Motion to Clarify the Audit Order. In the Memorandum Opinion and Order, Judge Torgensen terminated the audit. Judge Torgensen found the audit had "become entirely too expensive." Mem. Op. and Order at 2.

In its Motion to Clarify, Plaintiff represented to the Court that the auditor could produce a computer generated report listing all shipments of Defendant's products to Plaintiff's territories during the relevant time period. Therefore, Plaintiff requested the auditor provide the parties with this report including shipment of products to Houston, Texas and Tulsa, Oklahoma. Judge Torgensen granted Plaintiff's request and directed the parties to contact the auditor and arrange for a computer generated report listing all shipments of Defendant's products to Plaintiff's territories during the relevant time period, including the data regarding the shipment of products to Houston and Tulsa. Because the Court terminated the audit, Defendant's argument that it does not have to produce the requested documents because it would circumvent the audit process fails.

### a. Request for Production No. 11

Request for Production No. 11 requests "[a]ll documents evidencing or memorializing communications between Dresser, or anyone employed by or representing Dresser, and TSI, or anyone employed by or representing TSI, including, but not limited to, correspondence, notes, memoranda and email for the period January 1, 1999 through the present."

Defendant originally objected to Request for Production No. 11 on the grounds that the requested documents were protected by the attorney work product and/or attorney-client privilege, were confidential and proprietary commercial information, and that the request was overly broad and requested irrelevant information. Additionally, Defendant asserted the responsive documents were in "the possession, custody and control of Cooper Cameron Corporation." Defendant also represented to Plaintiff that it would "attempt to work with Cooper Cameron to make available for Plaintiff's review at a mutually agreeable time and place responsive, non-privileged documents . . . ."

9

### b.  Request for Production No. 12

Request for Production No. 12 requests "[c]opies of all signed and unsigned sales representation agreements between Dresser, or any of its affiliates or predecessors, and TSI, in effect between January 1, 1999 and March 31, 2005."

Defendant raised the same objections to Request for Production No. 12 as it raised to Request for Production No. 11.

### c.  Request for Production No. 13

Request for Production No. 13 requests "[a]ll documents, including but not limited to, correspondence, memoranda, notes, minutes or meetings and emails written or received by any employee or agent of Dresser, at any time, regarding the payment of commissions to TSI, or Dresser's relationship with TSI.."  Plaintiff makes clear in its request that it is not requesting "correspondence between employees or representatives of Dresser and Dresser's attorneys regarding the subject matter of this litigation."

Defendant raised the same objections as those it raised to Request for Production No. 11 except for the attorney-client privilege or the work product privilege.

### d.  Request for Production No. 14

Request for Production No. 14 requests "[t]he documents which John Lenander and Terry Bartels showed to John Greaney in Albuquerque, New Mexico in or about March 2005, containing documentation regarding commissions paid to TSI."

Defendant raised the same objections as the objections it raised to Request for Production No. 13.

The attorney-client privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his or her capacity as a legal advisor." *United States v. Phelan*, 3 Fed.Appx. 716, 718 (10th Cir. 2001).  The privilege is narrowly construed. *Fisher v. United States*, 425 U.S. 391, 403 (1976).  A party claiming the attorney-client privilege must prove its applicability. *Foster v. Hill (In re Foster)*, 188 F.3d 1259, 1264 (10th Cir. 1999).

On the other hand, the attorney work-product doctrine "shelters the mental processes of the attorney, providing a privileged area with which he can analyze and prepare his client's case." *In re Qwest Communications Int'l Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006)(quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975)).  "Work product can be opinion work product, which some courts have held to be absolutely privileged, or non-opinion work product, i.e., fact work product, which may be discoverable under appropriate circumstances." *Id.*  The protection applies to "attorneys' or legal representatives' mental impressions, conclusions, opinions, or legal theories authored in anticipation of litigation." *Grace United Methodist Church v. City of Cheynne*, 451 F.3d 643, 668 (10th Cir. 2006).  "The party asserting a work product privilege as a bar to discovery must prove the doctrine is applicable." *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995).

In opposing discovery on the grounds of over-breadth, a party has the burden to show facts justifying their objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome. *Super Film of Am., Inc. v. UCB Films, Inc.*, 219 F.R.D. 649, 651 (D.Kan. 2004).  "'This imposes an obligation to provide sufficient detail in terms of time, money and procedure required to produce the requested documents.'" *Id.* (quoting

11

*Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D.Kan. 2002)).  Thus, an objecting party cannot sustain this burden with boilerplate claims that the requested discovery is oppressive, burdensome or harassing.  *See, St. Paul Reinsurance Company, Ltd. v. Commercial Financial Corp.,* 198 F.R.D. 508, 511-13 (N.D.Iowa 2000).

In this case, Defendant failed to prove that the attorney-client privilege or the work product privilege apply.  Moreover, Defendant has not met its burden of showing that Plaintiff's discovery requests are burdensome.  Finally, Defendant has not shown why the parties' December 7, 2006 Stipulated Confidentiality Order will not protect its "confidential or proprietary information."  Accordingly, Defendant shall fully respond to Plaintiff's Request for Production Nos. 11, 12, 13, and 14.  Any requested documents in the possession of Cooper Cameron Corporation shall be made available to Plaintiff.

Finally, because the only objection raised by Defendant to Plaintiff's Second Motion to Compel Discovery is that the discovery requests are "an inappropriate attempt to circumvent the audit presently being performed" and because the Court has already overruled this objection, the Court will grant Plaintiff's Second Motion to Compel Discovery.  Defendant shall fully respond to Interrogatory No. 6.  In addition, Defendant contends Plaintiff is requesting the same documents in its January 26, 2007 Second Set of Interrogatories and Requests for Production of Documents that it requested in it November 13, 2005 First Set of Interrogatories and Requests for Production of Documents.  Accordingly, Defendant shall produce any documents requested in Plaintiff's Requests for Production Nos. 15 through 22 that Plaintiff did not request in its November 13, 2005 First Set of Interrogatories and Requests for Production of Documents.  Defendant  shall

produce the documents that are the subject of this Memorandum Opinion and Order fifteen (15) days from the date of the entry of the order.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**