UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**TECHNICAL SALES, INC.,**

    **Plaintiff,**

    v.                                    CIV. NO. 05-556 ACT/DJS

**DRESSER, INC.,**

    **Defendant.**

    v.

**JOHN GREANEY,**

    **Third-Party Defendant.**

**MEMORANDUM OPINION AND ORDER**

    **THIS MATTER** comes before the Court *sua sponte*. On October 1, 2007, the Court entered an Order to Show Cause [Doc. 139] ordering Plaintiff, Technical Sales, Inc.["TSI"], to show cause why it should not be sanctioned for failure to pay its portion of the fees charged by Grant Thornton, LLP ("Grant Thornton"), the independent auditor selected by the parties, as previously ordered by this Court. The Court held a hearing on November 13, 2007. Based on the evidence at that hearing and a review of the pleadings filed by the parties and Grant Thornton, the Court will impose sanctions against TSI.

    Background.

    TSI is a former sales representative for Defendant Dresser, Inc. ["Dresser"]. Dresser filed an arbitration action in Texas against TSI for TSI's failure to pay Dresser over $1 million for Dresser

products sold on credit to TSI, which were then resold by TSI to TSI's customers. TSI admits it owes Dresser $1,087,000.[1] TSI filed this lawsuit alleging that its debt to Dresser should be offset by commissions due to TSI on transactions pursuant to several Sales Representation Agreements. Dresser filed a Counterclaim and a Third-Party Complaint against John Greaney, President and majority stockholder of TSI ["Greaney"], for the over $1 million TSI owes to Dresser [Doc. 39].

With regard to TSI's commissions claims against Dresser, TSI suggested, the parties agreed, and the Court ordered, that an independent auditor be retained by the parties to determine if Dresser paid the proper commissions to TSI. The Court accepted TSI's proposed form of order regarding the work to be done by Grant Thornton. [Doc. 59.]

On March 2 and March 20, 2007, Grant Thornton produced two preliminary reports regarding its Phase I findings which addressed the issue of underpayment of commissions by Dresser. In response to issues raised by TSI regarding the Phase I reports, Grant Thornton proposed conducting a Phase II to review a statistically valid sample of all transactions involving Dresser products covered by the Sales Representation Agreements that had been shipped into TSI's contractual territory between 1999 and 2005. Dresser asserted that Phase II would provide "conclusions regarding over- or under-payment, if any, of commissions to TSI as well as the 'non-payment' of commissions to TSI." [Doc. 147 at 3.] TSI asserted that Phase II would "determine whether there were undisclosed transactions for which TSI was entitled to a commission." [Doc. 85 at 4.]

---

[1] It is also clear from the pleadings and testimony that TSI used this money for its own purposes, rather than setting it aside until this dispute could be resolved.

On April 3, 2007, TSI filed a Motion to Clarify Audit Order requesting that the Court terminate the audit because it did "not believe that the proposed Phase II will yield valid results and does not believe the proposed analysis could be cost effective." [Doc. 85.] In the Motion to Clarify, TSI states that Grant Thornton "has the ability to generate a report which lists all shipments of Dresser's products to TSI's territories during the relevant time period," and asked the Court to direct that such a report be provided to the parties.

The Court held a hearing on the Motion to Clarify on April 24, 2007. At the hearing, TSI asked Grant Thornton whether it could prepare the report it wanted. Grant Thornton responded that it could generate such a report for an additional $40,000 to $70,000. Grant Thornton further responded that full payment for past due invoice was required before conducting this additional work. The Court ordered that Dresser was not obligated to pay any of the cost of the additional report that TSI requested. [Doc. 141.]   TSI stated it did not have the money to pay Grant Thornton for the work done to date, but that it was seeking funding from several financial institutions.

In the Order addressing TSI's Motion to Clarify, the Court ruled that "[i]f the Plaintiff is unable to deposit its full share of its one-half of the Grant Thornton bill within 30 days of the date of this Order, the Plaintiff is directed to deposit $10,000 per month, due by the 15th of each month, into the Court Registry, until such time as the bill is paid in full." [Doc. 97.]  TSI made one $10,000 payment on or before June 15, 2007, but for each month thereafter TSI has been and is in continuing breach of the Court's Order.

Grant Thornton requested the Court hold a status conference regarding TSI's failure to pay what it owes to Grant Thornton. The Court held a status conference on May 24, 2007. At that conference TSI again stated it did not have the ability to pay Grant Thornton.  [Doc. 102.]

On May 25, 2007, the Court entered an order that "Plaintiff will not be allowed to retain or identify expert witnesses until it complies with the Court's Memorandum Opinion and Order of May 14, 2007 (Docket No. 97), regarding the payment of Grant Thornton's fees." [Doc. 103.]

Greaney's Testimony.

At the show cause hearing held on November 13, 2007, Greaney testified that he is President of TSI and holds 82% of its shares. In October of 2006, when the Audit Order was signed by him, TSI had approximately $2.7 million in debt in addition to what it owes Dresser. At that time TSI had $3.5 to $5 million in assets. These assets have remained "stable." In early 2007, Greaney personally assumed responsibility for a $400,000 loan TSI had with Four Corners Community Bank. Between October 2006 and April of 2007, TSI paid some vendors and taxes totaling approximately $300,000.

According to Greaney, TSI had been operating on a cash-only basis since at least August of 2004 when it stopped making payments to Dresser. TSI planned on paying for the Grant Thornton audit out of its cash flow, but in early 2007 TSI's volume decreased by one-half because of delayed contract renewals from some of its largest customers. As a result, TSI began making applications for loans with various financial institutions in 2007 to secure the necessary financing to pay Grant Thornton. TSI claims that despite diligent efforts by Greaney to obtain financing TSI has been unable to raise the necessary funds to comply with the Court's Order ending the audit and requiring TSI to pay one-half of Grant Thornton's outstanding bill. [Memorandum at 2, Doc No. 148.] Greaney testified that in early 2007 he had received a "verbal nod" from Pueblo Bank and Trust regarding a loan application. However, TSI's Exhibit 2 to the hearing showed that the application to Pueblo Bank and Trust did not occur until the summer of 2007. When confronted with this

discrepancy Greaney testified that the exhibit was in error with respect to attempts to obtain a loan from the Pueblo Bank and Trust and the date listed in that instance was the date the application was denied.[2]

Greaney testified that from September 2006 to May 2007 TSI's debt was in the $2.4 to 2.7 million range.  TSI's assets during this time remained constant in the $3.5 to 5 million range. Although there have been some instances where payments to vendors, financial institutions and tax deposits were slow between September 2006 and May 2007, TSI has remained solvent.  In addition to Grant Thornton, the only other non-payment during this period has been TSI's attorneys' fees.

TSI has been able to meet its payroll obligations during this period.  Although Greaney initially testified he had not received his $10,000 a month salary since April 2007, he later changed his testimony and acknowledged that paychecks were issued to him but has not cashed them.  All other employees, including shareholders, have been paid their regular salary.  TSI has an average monthly balance in its operating account of $50,000-100,000. TSI's assets include $1.3-1.5 million in one piece of real estate;$290,000 in another piece of real estate;  $200,000 in receivables (exclusive of what it alleges Dresser owes it); $275,000-300,000 in inventory; $400,000 in vehicles, equipment, furniture and fixtures; and $50,000-100,000 in the bank

Greaney testified that he has personal assets of $3-4 million which consists primarily of real estate holdings.  The $400,000 loan Greaney assumed on behalf of TSI in February 2007 is listed on TSI's books as a debt.  It would be difficult for Greaney personally to come up with the money to pay Grant Thornton's bill.

---

[2] Greaney testified that all of the other entries on Exhibit 2 regarding TSI efforts to obtain cash funding were accurate and reflected the dates the applications were made rather than the dates the applications were denied.

Greaney acknowledged receipt of Grant Thornton's bills and could offer no proof that he or his attorney objected to any of the bill's within twenty days of receipt as required pursuant to the agreement with Grant Thornton. There were discussions and possibly an exchange of e-mails between Greaney, TSI's counsel and Grant Thornton's representatives regarding "sticker shock," but TSI was able to offer no evidence of timely objections to Grant Thornton's billings.

Ehrenhaus factors.

It is well-settled that the Court possesses "inherent power to impose a variety of sanctions on litigants in order to regulate its docket, promote judicial efficiency, and deter frivolous filings." *ADS Fin. Servs. v. United States,* No. CIV 95-1469, 1997 U.S. Dist. LEXIS 4738 at * 6 (D.N.M. 1997) (Hansen, J.) (citations omitted); *see also Morris v. Adams-Millis Corp.,* 758 F.2d 1352, 1357 (10th Cir. 1985). For example, failure to comply with a court's order can result in dismissal of a plaintiff's action. *See ADS,* 1997 U.S. Dist. LEXIS 4738, at * 6; *see also* Rule 41(b) (defendant may move for dismissal of an action for failure of the plaintiff to comply with any order of the court).

Federal Rules of Civil Procedure 16(f) and 37(b)(2) also permit a court to impose sanctions for discovery violations.[3] The determination of a correct sanction for a discovery violation is a fact specific inquiry. *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992). The *Ehrenhaus* factors include: (1) the degree of actual prejudice to the opposing party; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would likely be taken as a sanction for non-compliance; and

---

[3]As the audit was requested by the parties as a means to conduct discovery in this matter, the Audit Order was entered pursuant to Federal Rule of Civil Procedure 26(f). Federal Rule of Civil Procedure 37(b)(2) specifically permits sanctions when a party "fails to obey an order entered under Rule 26(f)..." Federal Rule of Civil Procedure 16(f) provides for the imposition of sanctions for, *inter alia*, the failure to obey a pretrial order. Both Rules provide for the imposition of "reasonable expenses" including attorneys' fees incurred as a result of the opposing parties' noncompliance with court orders.

(5) the efficacy of lesser sanctions. *Ehrenhaus* at 921.  These factors do not constitute a rigid test, but should be considered in determining the appropriateness of a sanction.  With these factors in mind, the Court has considered the pleadings filed in this matter and the testimony and presentations of the parties at the show cause hearing.

*Degree of actual prejudice to the opposing party.*

As pointed out by Dresser in its Brief at page 8, [Doc. No. 147],  TSI's refusal to pay has directly prejudiced Dresser.  Dresser incurred almost a quarter of a million dollars in Grant Thornton invoices (which invoices Dresser has fully paid) for work Grant Thornton was conducting on behalf of both parties.  TSI then backed out of the as-yet-to-be completed audit completely, refusing to go forward with either the conclusion of "Phase I" or moving on to "Phase II," and thus preventing the "Phase II" work designed by Grant Thornton to reach independent, statistically valid conclusions regarding the very commissions that TSI claims it is due. Grant Thornton then, understandably, made it clear that it would not perform the "Phase II" work until TSI has fully paid its past-due bills.  As a consequence, TSI has created a situation wherein the final work to determine the under or over-payment, if any, of the commissions at issue (and for which Dresser has already paid more than $223,000) will not be performed by the independent auditor.

In addition, TSI's refusal to pay its bills has resulted in increased and unwarranted burden and expense for Dresser. For example, upon learning that Grant Thornton would not create reports requested by TSI until it had been paid by TSI, TSI tried to shift the cost of the creation of these reports onto Dresser by issuing to Dresser discovery requests for the creation of the same reports. As a consequence, Dresser was burdened, first with responding to those requests, then with responding to TSI's and Greaney's motions to compel regarding those requests, and currently with

responding to TSI and Greaney's objections to Judge Svet's orders in favor of Dresser regarding those requests. In addition, Dresser has had to respond to the Court's Order to Show Cause and prepare for and attend the hearing on November 13, 2007.

Further, Grant Thornton has indicated to the Court that it is very reluctant to provide any further services in this matter until it is fully paid by TSI. This could greatly prejudice Dresser's ability to prepare its defense against TSI's claims. For example, Grant Thornton may be a necessary fact witness in this matter with regard to explaining the "Phase I" preliminary reports it has already submitted, especially in light of the fact that TSI has expressly claimed that those reports "show that Dresser greatly underpaid TSI on the disclosed transactions as alleged by TSI." *See* TSI's Motion to Clarify, at 6. Grant Thornton may also be needed as a fact witness to explain the viability of its proposed "Phase II" analysis, which TSI has expressly claimed "would not yield valid results" because of numerous asserted flaws in Grant Thornton's methodology. *See id.* at 10-11. Grant Thornton has stated and explained otherwise.  Finally, Dresser has identified Grant Thornton as a potential witness with expert opinions regarding the TSI's claims. *See* Dresser's Expert Designation [Doc. Nos. 94 and 126]. TSI, however, has now created the situation wherein Grant Thornton might refuse to participate in any further proceedings or, at the very least, do so with great reluctance.

*Interference with the judicial process.*

TSI's failure to abide by the Court's orders have not only caused delay in resolving this matter but also wasted judicial resources. The Court held  status conferences on this matter on March 23, 2007 [Doc. 79],  May 24, 2007 [Doc. 102], and September 27, 2007 [Doc. 138].  It also held two hearings, a hearing on the Motion to Clarify Audit Order on April 24, 2007, [Doc. 92, ] and a hearing on the Order to Show Cause on November 13, 2007 [Doc. 153].   This use of the Court's

resources would not have been necessary if TSI had abided by the terms of the original Audit Order and paid its share of Grant Thornton's fees.

Moreover, TSI is willfully failing to comply with the Court's two Orders to pay Grant Thornton. Clearly, TSI has "flouted the court's authority." *Ehrenhaus*, 965 F.2d 921. TSI invoked the legal process and now disregards it.

### *Culpability of the litigant*.

TSI is the Plaintiff in this matter. TSI commenced this litigation. TSI requested the audit. TSI prepared the Audit Order which it has violated. The Court also notes that TSI owes it's lawyer approximately $90,000.

At the hearing to show cause, it was made clear to the Court that TSI, through its President, Greaney, has willfully breached its agreement with Grant Thornton, willfully failed to pay Grant Thornton, and willfully violated this Court's orders. As outlined above, TSI's financial situation has not changed significantly from when it proposed the independent audit, when it entered into the contract with Grant Thornton, and now. So either TSI had no intention of complying with the contract when it entered into the agreement with Grant Thornton and submitted the Audit Order, or it has willfully breached the contract and violated the Court's Orders by refusing to pay Grant Thornton. It appears to the Court that TSI has the means to pay Grant Thornton. TSI has simply chosen not to do so.

### *Prior warning*.

At this time, the Court will impose a lesser sanction than dismissal. However, the Court warns TSI that if it does not comply with this Order, the Court will dismiss its claims with prejudice.

*Efficacy of lesser sanctions.*

The Court has already sanctioned TSI to no avail (precluding TSI from retaining another expert witness until it pays Grant Thornton). [Doc. 103] Under the circumstances, the Court determines that requiring TSI to pay Grant Thornton and awarding attorneys' fees and costs to Dresser and Grant Thornton's attorneys would be an appropriate sanction.

**IT IS THEREFORE ORDERED** that:

1. TSI will pay Grant Thornton the balance due plus interest within thirty (30) days of entry of this Order.

2. Counsel for Dresser and Grant Thornton will file affidavits itemizing the time, attorneys' fees and costs incurred in preparing for and attending the show cause hearing on November 13, 2007, within fifteen (15) days of the entry of this Order.

3. TSI and Greaney may respond within ten (10) days of entry of Dresser's and Grant Thornton's affidavits.

4. Failure to comply with this Order will result in the dismissal of TSI's claims with prejudice.

5. If TSI complies with this Order, the Court will schedule a status conference to discuss the issue of calling Grant Thornton representatives as witnesses in this case.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE,**
**PRESIDING**