IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**TECHNICAL SALES INC.,**

      **Plaintiff,**

vs.                                                                                            **No. CIV 05-0556 ACT/DJS**

**DRESSER, INC.,**

      **Defendant,**
**and**

**DRESSER, INC.**

      **Counter-Plaintiff and**
      **Third-Party Plaintiff**

**vs.**

**TECHNICAL SALES, INC.,**

      **Counter-Defendant,**

**and**

**JOHN GREANEY,**

      **Third-Party Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff' Motion for Protective Order **[Doc. No. 161]**, filed on December 20, 2007, and fully briefed on January 22, 2008. Pursuant to FED.R.CIV.P 26(c), Plaintiff "seeks a protective order establishing the reasonable costs to be paid by TSI for copying documents which the Court ordered Dresser to produce . . . ." Pl.'s Mot. to Compel at 2.[1]

---

[1] See August 29, 2007 Memorandum Opinion and Order (Doc. No. 125) and September 20, 2007 Memorandum Opinion and Order (Doc. No. 134).

Plaintiff filed this action in State District Court on April 15, 2005. On May 20, 2005, Defendant removed the case to federal court. On November 14, 2005, Plaintiff served its First Set of Interrogatories and Requests for Production to Defendant, requesting the production of sales records for sales of certain products Defendant shipped into Plaintiff's territories under the parties' agreement. On December 1, 2005, Defendant sold part of its business to Cooper Cameron Corporation ("Cameron"), including the sales records for the majority of the transactions at issue in this action. However, under Section 5.03 of the Purchase Agreement between Defendant and Cameron, Cameron agreed to allow Defendant "reasonable access (including for inspection and copying, at Seller's expense), . . . to such books, documents, information, data, files and other records, including in connection with claims, proceedings, actions, investigations, audits and other regulatory or legal proceedings . . . ." *See* Ex. A.

In the Court's September 20, 2007 Memorandum Opinion and Order, the Court ordered Defendant to "produce the documents requested in Requests for Production Nos. 17 and 18 but only as to 'each sale of a Dresser product which was shipped into or resold in TSI's territories for the period January 1, 1999 though 200[5]' and only as to products identified in the Sales Representation Agreements between Dresser and TSI." Mem. Op. at 4-5. Nonetheless, Defendant elected to produce all of its sales folders for all transactions rather than segregating out the documents which the Court ordered it to produce.

During the week of October 15, 2007, John Greaney began Plaintiff's inspection of the sales folder in Houston, Texas. Defendant had arranged to have Cameron produce the documents at Cameron's facilities. Mr. Greaney spent considerable time designating numerous documents for copying. Terry Bartel, a Cameron employee and former employee of Defendant, informed

Mr. Greaney that Cameron preferred to have its employees copy the documents "in house" and would have its employees copy the documents that weekend. Mr. Greaney inquired about the cost; Mr. Bartel referred him to "Dresser's attorneys. *See* Pl.'s Ex. B. Thereafter, Mr. Greaney requested Ryan Flynn or Douglas Vadnais provide him with the total cost to copy the designated documents. *Id.* According to Plaintiff, no one provided him with the cost of copying the documents prior to making the copies.

During the week of October 29, 2007, Mr. Greaney designated numerous documents for copying at the Cameron facility in Hammond, Louisiana. Additionally, during the week of November 12, 2007, Mr. Greaney designated numerous documents for copying at the Cameron facility in Ponca City, Oklahoma. Plaintiff also has to inspect and designate documents for copying at a facility in Chicago, Illinois. Defendant still controls this facility.

On November 24, 2007, Mr. Vadnais sent Jack Hardwick, Plaintiff's counsel, an e-mail, informing Mr. Hardwick he had received the documents Mr. Greaney had designated for copying in Houston and Hammond. *See* Pl.'s Ex. C. Mr. Vadnais informed Mr. Hardwick he would make the documents available upon receipt of $5,176.57. Mr. Vadnais stated this was the amount Cameron charged for them. Mr. Vadnais explained to Mr. Hardwick that Terry Bartel had his staff copy the documents on the weekend at a cost of $50 per hour per individual. Plaintiff contends it was not informed about this arrangement. Mr. Vadnais also informed Mr. Hardwick he did not yet have Cameron's bill for copying the Hammond documents.

On November 28, 2007, Mr. Hardwick responded to the e-mail and requested the number of pages copied and a copy of the bill. *See* Pl.'s Ex. D. In addition, Mr. Hardwick made clear Plaintiff would pay the reasonable costs of copying but would not pay for Bates numbering or for

3

extra copies made for Cameron and Defendant.  *Id.*  The following day, Mr. Hardwick requested "a breakdown of the charges, and the number of pages copied."  *See* Pl.'s Ex. E.

On November 30, 2007, Mr. Vadnais responded to Mr. Hardwick's November 28, 2007 e-mail.  *See* Pl.'s Ex. F.  Mr. Vadnais enclosed an itemization of Cameron's charges "to produce, copy, and ship the documents" Mr. Greaney designated in Houston.[2]  Mr. Vadnais now stated the total was $7,343.89, not $5,176.57, but he explained Plaintiff would only be responsible for $6,680.61.  Mr. Vadnais explained Defendant would be responsible for half the cost of the binders, paper, and shipping.  Mr. Vadnais opined the amount was reasonable "given the scope of the production."  *Id.*  However, Mr. Vadnais did not disclose the number of pages actually copied.  Moreover, Mr. Vadnais informed Mr. Hardwick Defendant could not dictate to Cameron what to charge for the copying because the documents now belonged to Cameron.

On December 7, 2007, Mr. Vadnais wrote a letter to Mr. Hardwick.  *See* Ex. G.  In this letter, Mr. Vadnais informed Plaintiff he had received Cameron's charges for copying the documents at the Hammond facility.  Mr. Vadnais requested $3,249.95 before he would release the documents to Plaintiff.  *Id.* at pg 2.  Mr. Vadnais itemized this amount as follows: (1) $200.50 for supplies; (2) $199.32 for shipping; and (3) $3,50.00 for "labor to locate, pull, copy, and send the documents."  *Id.*  Mr. Vadnais opined the costs for supplies and shipping "should be split equally between our clients."  *Id.*  Although Mr. Hardwick had requested the number of pages actually copied, Mr. Vadnais did not provide this information.  Accordingly, Mr. Hardwick responded by e-mail on the same day, stating: "Would you please tell me how many pages of

---

[2] Cameron charged $3,850 for wages paid at $50/ hour for 77 hours, $2,167.32 for retrieval and refile charges, $311.20 for office supplies, and $1,15.37 for UPS charges.

documents were designated to be copied in Houston and in Hammond? Since you have Bates numbered the documents you should easily be able to give me an exact number." *See* Ex. H.

On December 14, 2007, Mr. Hardwick e-mailed Mr. Vadnais to request the same information. *See* Pl.'s Ex. I. Mr. Hardwick stated: "You still haven't told me how many pages were designated to be copied by Mr. Greaney in Houston, and in Hammond, as I requested in My December 7, 2007, email, a copy of which is attached."

On December 18, 2007, Mr. Vadnais responded via e-mail. Mr. Vadnais stated there were "about 7,100 documents from Houston and about 4,100 documents from Hammond." *See* Ex. J. In response, Mr. Hardwick e-mailed the following: "are those the number of documents which John Greaney designated to be copied? What are the Bates numbers? I'm not asking for the total number of copies made because that would include copies made for you and for Cooper Cameron." *See* Ex. K. Mr. Vadnais did not provide this information.

On December 19, 2007, at Mr. Hardwick's request, the Court held a conference call to address the parties' dispute over the reasonableness of the copying charges for documents copied at the Houston and Hammond facilities. As a result of the telephonic conference, counsel stipulated to, *inter alia*, Defendant providing the exact number of pages designated by Plaintiff for copying at the Houston and Hammond facilities, Defendant allowing Plaintiff to pick up the copied documents at counsel's Albuquerque office upon payment based on $ 0.20 per page, and Plaintiff filing a Motion for Protective Order by December 28, 2007. *See* Stipulation Regarding Copying Costs (Doc. No. 173, filed January 4, 2008).

In its response, Defendant contends the fee of $ 0.15 to $ 0.25 per page that commercial copy services typically charge is not a reasonable measuring stick to approximate the actual costs

of copying under the facts and circumstances of this case.  Defendant maintains the actual costs incurred by Cameron to copy the documents is reasonable.   Defendant argues:

> The amounts of the costs are also reasonable.  The supplies and shipping charges are the actual cost thereof, without any markup.  It was also reasonable for Cameron to charge $50 per hour for each of the two employees who did the copying.  This was in line with their standard overtime pay and the urgency with which their services were required.  Moreover, it is reasonable for TSI to bear the cost of labor while TSI and Dresser split the cost of supplies and shipping.  Cameron made a duplicate set of copies for Dresser, so half the paper and half the shipping relate to Dresser's set.  With respect to the labor, however, the vast majority of the work relates to locating the documents, removing them from the file, and then returning them to the right place.  This is all required to make a copy of each document designated by TSI, and the additional labor required to make two copies instead of just one is de minimus.

Def. Dresser Inc.'s Resp. to Pl.'s Mot. for Protective Or. at 10 (internal citations to exhibits omitted).

Under the discovery rules, a party may request any other party to produce and permit inspection and copying of "any designated documents" in the party's custody or control that "contain matters within the scope of Rule 26(b)."  Fed.R.Civ.P. 34(a).  Additionally, under rule 26(c) of the Federal Rules of Civil Procedure, a party may file a motion for a protective order, which a court may grant when it is necessary to "protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense."  Fed.R.Civ.P. 26(c).  *See Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 482 (10th Cir.1995) (affirming issuance of protective order).

Having given careful consideration to the parties' arguments and concerns, the Court finds that Defendant's proposal of $7,343.89 and $3,449.91 for copying the documents at the Houston and Hammond facilities, respectively, is unreasonable.  It was incumbent for Defendant to produce the documents Plaintiff designated for copying.  Under the Purchase Agreement between Cameron and Defendant, Defendant had "reasonable access" to the documents Plaintiff

designated.  The Purchase Agreement also specifies, "**at Seller's expense**," Defendant has access "for inspection and copying, . . . documents . . . in connection with . . . legal proceeding . . . ." Pl.'s Ex. A.  Thus, Defendant cannot shift the cost of labor to retrieve and refile the documents at the facilities in Houston and Hammond to Plaintiff.  Defendant also had an obligation to respond to Plaintiff's inquiry regarding the cost for copying the designated documents.  Since the parties have agreed to employ a commercial copy service for copying the designated documents in Ponca City, Oklahoma, the Court will determine the reasonable cost for copying the documents in Houston and Hammond based on the cost of this service.[3]  As soon as counsel have an invoice from the Ponca City, Oklahoma commercial copy service, they shall submit it to the Court.  At that time, the Court will determine what Plaintiff shall pay for documents copied in Houston and Hammond.  It is the Court's understanding that Plaintiff will be responsible for the expense of shipping the copies from Ponca City to Defendant's counsel.  *See* Stipulation Regarding Copying Costs at No. 7.   Finally, Plaintiff's request for attorney fees incurred for filing this motion is denied.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**

---

[3] Cameron has allowed "a commercial copy service to pick up the records, take them offsite for copying, and return them, provided that Cameron is afforded the opportunity to have an employee present with the records during the copying."  Stipulation Regarding Copying Costs at No. 7. Any cost Cameron incurs for having its employee present during the copying shall not be charged to Plaintiff.